IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| JANE DOE; | ) |
| JOHN DOE; | ) Case No.: _____ |
| JACK DOE; | ) |
| WINK'S SPORTING GOODS; | ) |
| ATLANTIC GUNS, INC.; | ) |
| ASSOCIATED GUN CLUBS OF BALTIMORE, INC.; | ) |
| MARYLAND SHALL ISSUE, INC.; | ) |
| MARYLAND STATE RIFLE AND PISTOL ASSOCIATION, INC.; | ) |
| and, | ) |
| MARYLAND LICENSED FIREARMS DEALERS ASSOCIATION, INC., | ) |
| Plaintiffs, | ) |
| v. | ) |
| MARTIN J. O'MALLEY, in his official capacity as Governor of the State of Maryland; | ) |
| DOUGLAS F. GANSLER, in his official capacity as Attorney General of the State of Maryland, | ) |
| COL. MARCUS L. BROWN, in his official capacity as Secretary of the Department of State Police and Superintendent of the Maryland State Police, | ) |

| | )|
|---|---|
|and,| )|
| | )|
|MARYLAND STATE POLICE,| )|
| | )|
| | )|
|  Defendants.| )|
| | )|
| | )|
|Serve On:| )|
| | )|
|  Office of the Attorney General| )|
|  Douglas F. Gansler| )|
|  Attorney General| )|
|  200 St. Paul Place| )|
|  Baltimore, Maryland 21202| )|

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

NOW COME Plaintiffs Jane Doe, John Doe, Wink's Sporting Goods, Atlantic Guns, Inc., Associated Gun Clubs of Baltimore, Inc., Maryland Shall Issue, Inc., Maryland State Rifle and Pistol Association, Inc., and Maryland Licensed Firearms Dealers Association, Inc. (collectively, "Plaintiffs"), by and through their attorneys, and for their complaint against Martin J. O'Malley, in his official capacity as Governor of the State of Maryland; Douglas E. Gansler, in his official capacity as Attorney General of the State of Maryland; Col. Marcus L. Brown, in his official capacity as Secretary of the Department of State Police and Superintendent of the Maryland State Police; and Maryland State Police (collectively, "Defendants"), state as follows:

## INTRODUCTION

1. Unlike many other States, Maryland has never articulated the right to keep and bear arms in its constitution. It is not surprising that Defendants enjoyed one of the nation's

more restrictive regimes regulating the acquisition and ownership of firearms at the time the United States Supreme Court first recognized this fundamental individual right. *See District of Columbia v. Heller*, 554 U.S. 570, 624, 635 (2008); *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). Rather than narrowing its firearm regulations in light of the Supreme Court's teaching to ensure the State did not impermissibly infringe on the Second Amendment, Defendants chose instead to double down on firearm regulation by imposing an additional, even more restrictive permit-to-purchase license on top of its pre-existing application process that will result in a complete deprivation of Plaintiffs' right to acquire a handgun for lawful use in their homes.

2. Even as Marylanders flocked in record numbers to purchase handguns, Defendants passed The Firearm Safety Act of 2013 (the "Act"), which impermissibly infringes upon the "core right identified in *Heller* – the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense." *United States v. Chester*, 628 F.3d 673, 683 (4th Cir. 2010). Rather than providing adequate resources to process the applications of tens of thousands of Maryland citizens seeking to exercise their rights, Defendants erected even more obstacles to handgun ownership. The Act creates a Handgun Qualification License scheme that has the immediate effect on Tuesday, October 1, 2013, of completely preventing Plaintiffs from exercising the right to acquire a handgun, which is "'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family.'" *Heller*, 554 U.S. at 628-29 (quoting *Parker v. District of Columbia*, 478 F.3d 3701, 400 (D.C. Cir. 2011)).

3. Plaintiffs seek relief from this Court to prevent the imposition of a complete prohibition, for an indeterminate amount of time, on their exercise of the fundamental right "to

keep and bear Arms," a right the Second Amendment declares "shall not be infringed." U.S. CONST. amend. II. As interpreted by the United States Supreme Court, the Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 636. Defendants' enforcement of the licensing scheme will result in a complete ban in the acquisition of handguns and, therefore, is one the Supreme Court has said is "off the table." *Id.*

4. The Act's Handgun Qualification License requirement takes effect October 1, 2013, after which, except for certain excluded persons, no one may transfer and no one may receive a handgun in the State of Maryland unless the transferee has a Handgun Qualification License. On October 1, 2013, no one in the State of Maryland will have a Handgun Qualification License, and no one can credibly predict when anyone in the State of Maryland will obtain a Handgun Qualification License. This Catch 22 creates a complete ban on the acquisition of handguns in Maryland as of October 1, 2013.

5. This situation is made even worse by the backlog of nearly 50,000 applications for purchase of handguns and other regulated firearms being processed by the Defendant Maryland State Police. According to an opinion of the Defendant Maryland Attorney General, the applicants caught in that backlog on October 1, 2013, cannot receive their handgun until they first obtain a Handgun Qualification License.

6. Defendant Maryland State Police, however, has released a "News Release" in which it states that it will not enforce the Handgun Qualification License requirement with respect to anyone who has purchased a handgun before October 1, 2013. Defendant Maryland State Police is not the only law enforcement agency with authority to enforce the provisions of

4

the Act, Defendant Maryland State Police's statement only confuses rather than clarifies what is permitted and what is not with respect to handgun acquisition.

7. For the reasons alleged below, Plaintiffs respectfully request that this Court stay the effective date of, and enjoin Defendants temporarily, preliminarily and permanently from enforcing, the Act's Handgun Qualification License provisions, declare that Section 5-117.1 of the Public Safety Article of the Maryland Code, as amended by the Act, infringes impermissibly on Plaintiffs' constitutional rights while no Handgun Qualification Licenses can be obtained, and for other relief including the award of Plaintiffs' costs and attorneys' fees.

## PARTIES

8. Plaintiff Jane Doe ("individual Plaintiff") is a resident of Somerset County, Maryland, and a citizen of the United States. She has purchased a handgun from Plaintiff Wink's Sporting Goods and has submitted a Form 77R to Defendant Maryland State Police. Because of the eight day waiting period, she will be unable to take possession of her already purchased handgun before October 1, 2013, and will be required to obtain a Handgun Qualification License.

9. Plaintiff John Doe ("individual Plaintiff") is a resident of Montgomery County, Maryland, and a citizen of the United States. He purchased a handgun on September 26, 2013, and has submitted a Form 77R to Defendant Maryland State Police. Because of the mandatory eight-day waiting period, he will be unable to take possession of his already-purchased handgun before October 1, 2013, and will be subjected to the Handgun Qualification License requirement.

10. Plaintiff Jack Doe ("individual Plaintiff") is a resident of Montgomery County, Maryland, and a citizen of the United States. He possesses a permit to carry a concealed weapon

issued by Defendant Maryland State Police. He purchased a handgun on September 25, 2013, and has submitted a Form 77R to Defendant Maryland State Police. Because of the mandatory eight-day waiting period, he will be unable to take possession of his already-purchased handgun before October 1, 2013, and will be subjected to the Handgun Qualification License requirement.

11. Each individual Plaintiff is eligible under the laws of the United States and the State of Maryland to receive and possess handguns and would, but for the Act, acquire a handgun on or after October 1, 2013.

12. Plaintiffs Wink's Sporting Goods and Atlantic Guns, Inc. ("business Plaintiffs") are Maryland corporations with principal places of business in Princess Anne, Maryland, and Silver Spring and Rockville, Maryland, respectively. Wink's Sporting Goods and Atlantic Guns each hold a Federal Firearms License ("FFL") and are Maryland regulated firearms dealers, such that they are permitted to buy, sell, receive, and transfer firearms within and without Maryland. The firearms sold by Wink's Sporting Goods and Atlantic Guns include handguns, the sale of which is completely curtailed by the Act.

13. Plaintiff Associated Gun Clubs of Baltimore, Inc. ("AGC," "association Plaintiff"), is a Maryland corporation that was formed on July 1, 1944 when a number of World War II veterans in the Baltimore, Maryland area began looking for a place for recreational and competitive shooting. In addition to operating a target shooting range facility, providing hunting and target shooting instruction courses that promote general firearm safety, and offering programs and events that encourage adult and youth participation in the shooting sports, AGC supports, encourages, and actively promotes the private ownership of firearms for all law abiding

citizens. AGC consists of 15 charter member clubs as well as 14 associate member clubs. Members of AGC would, but for the Act, purchase or receive handguns after October 1, 2013.

14. Plaintiff Maryland Shall Issue, Inc. ("MSI," "association Plaintiff"), is an all volunteer, non-partisan organization dedicated to the preservation and advancement of gun owners' rights in Maryland. MSI seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. Members of MSI would, but for the Act, purchase or receive handguns after October 1, 2013.

15. Plaintiff Maryland State Rifle and Pistol Association, Inc. ("MSRPA," "association Plaintiff") is an organization dedicated to promoting safe and responsible marksmanship competition and hunter safety throughout Maryland. MSRPA also seeks to educate citizens about responsible firearm ownership. MSRPA advocates on behalf of its individual members. Its individual members include both individual firearm owners and firearm and marksmanship clubs. Members of MSRPA would, but for the Act, purchase or receive handguns after October 1, 2013.

16. Members of association Plaintiffs AGC, MSI, and MSRPA have purchased handguns before the effective date of the Act, but, because of the extraordinary delay in processing their applications committed by Defendant Maryland State Police, they will be unable to take possession of their already-purchased firearms prior to October 1, 2013, and will be subjected to the Handgun Qualification License provisions of the Act.

17. Plaintiff Maryland Licensed Firearm Dealers Association, Inc. ("MLFDA," "association Plaintiff"), is a Maryland corporation that represents the constitutional and

7

economic interests of its numerous firearm dealer members in the State of Maryland as well as those of its members' customers and potential customers. MLFDA advocates on behalf of its individual members. Its individual members engage in commercial transactions involving firearms with residents of the State of Maryland. Specifically, many of MLFDA's individual members hold FFLs and are Maryland regulated firearms dealers, such that they are permitted to buy, sell, receive, and transfer firearms within and without the State of Maryland. The firearms sold by MLFDA's individual members include handguns. MLFDA's members will not be able to sell or transfer any handguns as of October 1, 2013, because of the Act.

18. Each of the above association Plaintiffs brings suit on its own behalf and on behalf of its members.

19. Plaintiffs have standing to bring this challenge in that individual Plaintiffs and members of association Plaintiffs will imminently suffer, as of October 1, 2013, a complete deprivation, for an indeterminate period of time, of their Second Amendment right to purchase and possess handguns for self-defense in their home as a result of Defendants' enforcement of the Act. Business Plaintiffs will imminently suffer a significant loss of income by virtue of Defendants' enforcement of the Act.

20. Defendant Gov. Martin J. O'Malley is the Governor of the State of Maryland. As Governor, Defendant O'Malley serves as the Chief Executive Officer of the Executive Branch of the government of Maryland and is responsible for "tak[ing] care that the Laws are faithfully executed." MD. CONST. ARTICLE II, § 9. The Office of the Governor is a principal department of the government of the State of Maryland established by MD. CONST. ARTICLE II, § 1.

21. Defendant Douglas F. Gansler is the Attorney General of the State of Maryland. As Attorney General, Defendant Gansler is responsible for providing legal advice to the Governor and the General Assembly and has authority to investigate and prosecute crimes on behalf of the State of Maryland. Md. Const. Article V, § 3. The Office of the Attorney General is a principal department of the government of the State of Maryland established by Md. Const. Article V, § 1.

22. Defendant Col. Marcus L. Brown is the Secretary of the Department of State Police and Superintendent of the Maryland State Police. Col. Brown is responsible for the operation of the Maryland State Police, including the Maryland State Police's Licensing Division. The Licensing Division administers the law and conducts investigations concerning the sale and transfer of regulated firearms, the licensing and regulation of Maryland Registered Firearms Dealers, and the certification of regulated firearm collectors. As Secretary of the Department of State Police and Superintendent of the Maryland State Police, Defendant Col. Marcus L. Brown "supervise[s] and direct[s] the affairs and operations of" the Maryland State Police. MD CODE ANN., PUB. SAF. § 2-202(e)(1); *see also* MD CODE ANN., PUB. SAF. § 2-204. The Maryland State Police is charged with "the responsibility to ... enforce the laws and ordinances of the State." MD CODE ANN., PUB. SAF. § 2-301(a)(2)(iii).

23. Defendant Maryland State Police is a principal department of the State government of the State of Maryland, established and operated pursuant to Maryland Code, Public Safety Article, Sections 2-101, *et seq.*

24. All Defendants herein are being sued in their official capacities.

**JURISDICTION**

25. Jurisdiction is founded on 28 U.S.C. § 1331, in that this action arises under the Constitution of the United States, and under 28 U.S.C. § 1343(3), in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of Maryland, of rights, privileges, or immunities secured by the United States Constitution.

26. This action seeks relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. §§ 1983 and 1988.

27. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

### The Maryland Firearm Safety Act of 2013

28. On May 16, 2013, the Governor of Maryland signed into law the Firearm Safety Act of 2013. The Act takes effect on October 1, 2013, Act § 3, and, among other things, imposes novel burdens on the ability of law-abiding citizens to acquire handguns for protection in their own homes by requiring a Handgun Qualification License as a precondition to applying to purchase or otherwise acquiring a handgun. Because Defendants have not yet made available, nor will they make available before October 1, 2013, a mechanism for applying for a Handgun Qualification License, Defendants have caused a complete ban on the acquisition of handguns to become effective on that date, which will last for an indeterminate amount of time. In so doing, the Act compromises the Plaintiffs' right to safeguard themselves in the home and exposes them to risk of extreme harm and even death.

**Statutory Framework**

29. The Act creates an entirely new regime of procedures for acquiring a handgun in Maryland and imposes that new scheme on top of the existing regulatory framework that has been in place for decades. This additional layer of bureaucratic burden cannot be administered adequately by Defendant Maryland State Police that is already overwhelmed by its pre-existing firearm regulatory responsibilities.

30. Under Section 5-117.1(b) of the Public Safety Article of the Maryland Code, as amended by the Act, it is illegal to "sell, rent, or transfer" a handgun unless the recipient of the handgun presents to the seller a valid Handgun Qualification License.

31. Only those sellers who are manufacturers, current or former law enforcement officers, current or former members of the United States Armed Services or National Guard, and those transacting in antiques or curios as defined by federal law or regulation are immune from prosecution for completing such a transaction. MD. CODE ANN., PUB. SAF. § 5-117.1(a).

32. Section 5-117.1 of the Public Safety Article, as amended by the Act, also prohibits an otherwise qualified person from purchasing, renting, or receiving a handgun unless he or she possesses a valid Handgun Qualification License.

33. Only those purchasers who are current or former law enforcement officers, current or former members of the United States Armed Services or National Guard, and those transacting in antiques or curios as defined by federal law or regulation are immune from prosecution for completing such a transaction. MD. CODE ANN., PUB. SAF. § 5-117.1(a).

34. A person who violates either of the prohibitions described in paragraphs 31 or 33 is guilty of a misdemeanor and may be fined up to $10,000 dollars and imprisoned for up to five

years. MD. CODE ANN., PUB. SAF. § 5-144(b). A conviction under this provision would result in the loss of the sellers' federal license to sell and the purchasers' right to possess firearms of all kinds.

### Injury to Plaintiffs

35. Individual Plaintiffs wish to acquire and possess handguns for protection in the home, and are subject to and adversely affected by the complete ban on the acquisition of handguns that will be in effect on October 1, 2013.

36. Members of association Plaintiffs AGC, MSI, and MSRPA ("members") wish to acquire and possess handguns for protection in the home, and are subject to and adversely affected by the complete ban on the acquisition of handguns that will be in effect on October 1, 2013.

37. Members of association Plaintiff MLFDA and business Plaintiffs are in the business of buying and selling firearms used for protection in the home, including handguns, within and without the State of Maryland. Their respective businesses are adversely affected by the complete ban on the acquisition of handguns that will be in effect on October 1, 2013, in that their sales will be completely cut-off by virtue of Defendants extinguishing law-abiding, responsible citizens' rights to lawfully purchase handguns.

### Injury Threatened by Defendants

38. The provisions of the Act set forth herein prevent the exercise of individual Plaintiffs', business Plaintiffs', and members of association Plaintiffs' right to acquire and use handguns to defend themselves in their homes, and thus from exercising their core Second Amendment rights they intend to and would otherwise exercise, but for such provisions. Should

any individual Plaintiff, business Plaintiff, or member of association Plaintiff run afoul of any such provision, such person is subject to arrest, prosecution, conviction, incarceration, fines, forfeitures, loss of the right to keep and bear and/or sell arms, and loss of other civil rights. Accordingly, as a proximate cause of the enforcement of the Act by Defendants as aforesaid, Plaintiffs will be subject to irreparable harm.

## COUNT ONE
### (The Handgun Qualification Requirement in the Act Violates the Second Amendment to the United States Constitution By Completely Banning the Acquisition of Handguns as of October 1, 2013)

39. The preceding paragraphs are re-alleged and incorporated herein by reference.

40. The United States Supreme Court, in *Heller*, invalidated a complete prohibition on the ownership of handguns in the District of Columbia. In so doing, the Court recognized that "the handgun is the quintessential self-defense weapon," 554 U.S. at 629, and that "the enshrinement of constitutional rights takes some policy choices off the table." *Id.* at 636.

41. Because Plaintiffs will not be able to receive a handgun without a Handgun Qualification License as of October 1, 2013, and Defendants have failed to provide any mechanism for acquiring such a license to date, Plaintiffs are effectively barred from exercising their constitutional right to own a handgun in their homes for self defense. This *de facto* ban on acquiring handguns will continue for an unidentifiable amount of time, given that there is no information on when and where safety courses will be offered, how long the fingerprint and background checks will take, or how long it will take Defendant Maryland State Police to process the applications.

42.     That the Act states that Defendant Maryland State Police "shall issue to the applicant a Handgun Qualification License if the applicant is approved" within thirty days of receiving the application provides little comfort.  Defendant Maryland State Police has failed to complete its statutory duty to disapprove applications for regulated firearms within seven days as required by Section 5-122(b) of the Public Safety Article, Maryland Code Annotated, for over a year, despite agreeing to do so in response to a lawsuit over this very matter.  That backlog of unprocessed applications to purchase regulated firearms, including handguns, stands at nearly 50,000 today, and it is taking almost four months to process an application.  Given Defendants' inability to fulfill their obligations under Maryland law to review timely handgun applications, the fact that there is a thirty-day statutory guarantee within which an application for a Handgun Qualification License must be approved cannot salvage this unconstitutional *de facto* ban.

43.     Beginning on October 1, 2013, there will be a complete prohibition on acquiring handguns in the state of Maryland, a result that is in direct violation of the Second Amendment, as was made clear in *Heller*.

### COUNT TWO
**(Defendant Maryland State Police's and Defendant Gansler's Opposing Statements on Whether Handguns Purchased Prior to October 1, 2013 Can Be Lawfully Transferred Without a Handgun Qualification License Have Created Mass Confusion and Exposed Plaintiffs to Criminal Prosecution)**

44.     The preceding paragraphs are re-alleged and incorporated herein by reference.

45.     On August 1, 2013, the office of the Attorney General of Maryland issued a legal opinion (the "August 1 Opinion Letter") in response to a request from Delegate Michael D. Smigiel, Sr. The August 1 Opinion Letter provided:

> You have asked for advice concerning whether a person who purchases a handgun before October 1, 2013 may accept delivery of the handgun if it is delayed past October 1 due to delays in background checks without first obtaining a handgun qualification license. **It is my view that they may not.**
>
> Chapter 427, Laws of Maryland 2013, enacted by Senate Bill 281, added a new Public Safety Article, § 5-117.1, which generally provides that a dealer may not sell, rent, or transfer a handgun to a person unless the person presents that person's handgun qualification license to the dealer. § 5-117.1(b). It further provides that a person may purchase, rent, or receive a handgun only if the person possesses a valid handgun qualification license issued to them. § 5-117.1(c). **No exception is made for handguns that are ordered or applied for prior to October 1, 2013.** *Contrast* Criminal Law Article, § 4-303(b)(3) (allowing a person to possess and transport an assault long gun or a copycat weapon if the person lawfully possessed, has a purchase order for, or completed an application to purchase an assault long gun or a copycat weapon prior to October 1, 2013). In the absence of such an exception, it is my view that after October 1, 2013 a person may not take delivery of, and a dealer may not deliver, a handgun to a person who does not have a handgun qualification license, even if the purchase was arranged prior to October 1, 2013.

(Emphasis added)

46. On September 24, 2013, Defendant Maryland State Police issued a "News Release," headed "Firearm Purchase Applicants With Applications Pending on October 1 Will Not Need To Obtain A Handgun Qualification License." (the "MSP Release"). The MSP Release provided in pertinent part:

> Marylanders who have submitted handgun purchase applications on or before September 30 **will not be required** to obtain a handgun qualification license, **as required by the new law** that is set to take effect on Oct. 1.
> The new law that takes effect in Maryland on October 1 states that a handgun may not be sold, rented, or transferred unless the purchaser, lessee, or transferee has a valid handgun qualification license.
> The Maryland State Police (MSP) will not enforce the requirements of the new law with respect to applicants whose applications are pending as of October 1. It was widely understood that the new requirements would not be enforced as to applications that were pending before October 1. In light of the number of currently pending applications—resulting from the unprecedented spike in new

15

> applications in recent months—it is a fair, reasoned, and appropriate result for those who are waiting for their pending purchase applications to be processed.
>
> Persons who submit purchase applications on or after October 1, 2013, unless otherwise exempted by law, will be required to apply for and obtain a handgun qualification license before attempting to purchase a handgun.

(Emphasis added)

47. The MSP Release has engendered, and will continue to engender, mass confusion as to the state of the law with respect to the implementation and effect of the Handgun Qualification License requirement. The text of the MSP Release itself is plainly ambiguous, as it states <u>both</u> that a Handgun Qualification License will not be required for those who have submitted a handgun purchase application prior to October 1, 2013, <u>and</u> that SB 281 affirmatively requires that a Handgun Qualification License will be required for those who have submitted a handgun purchase application prior to October 1, 2013. Clearly, something cannot be simultaneously required and not required under the law.

48. The August 1 Opinion Letter and the MSP Release contradict one another. Under these circumstances alone, it is impossible for Plaintiffs to know what their rights or potential liabilities are under the Handgun Qualification License provisions of the Act.

49. In addition to the MSP Release stating a legal position which the office of the Attorney General of Maryland has already determined is improper under the Act, there exist other reasons why Plaintiffs cannot prudently rely on the MSP Release. While Defendant Maryland State Police may have general state-wide jurisdiction to enforce a state law, other law enforcement officials have jurisdiction as well, including every county' State's Attorney, police chief, and/or Sheriff. None of these other Maryland law enforcement officials is constrained by the MSP Release.

50.    In addition, it is far from clear that a Maryland firearm dealer can lawfully comply with the MSP Release while also adhering to federal requirements for maintaining its Federal Firearms License ("FFL"), which is a prerequisite to maintaining its Maryland Regulated Firearms License ("MRFL").

51.    Federal law, 18 USC § 922(b), provides in pertinent part:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver –

(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age;

(2) any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance;

52.    Furthermore, the webpage of the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") provides expressly:

Q: Does the Federal firearms law require licensees to comply with State laws and local published ordinances when selling firearms?

Yes. It is unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver any firearm or ammunition to any person if the person's purchase or possession would be in violation of any State law or local published ordinance applicable at the place of sale or delivery.

[18 U.S.C. 922(b)(2), 27 CFR 478.99(b)(2)]

*See*    http://www.atf.gov/firearms/faq/licensees-conduct-of-business.html#compliance-with-laws-ordinances.

53. In short, while Defendant Maryland State Police might not enforce the Handgun Qualification License requirement, it is still unlawful for a seller to deliver a handgun to a purchaser who does not have a Handgun Qualification License after October 1, 2013. Thus, all federally licensed dealers are potentially violating federal law and can be prosecuted and/or made to forfeit their FFLs and MRFLs.

54. Plaintiffs in this case are faced with competing statements of the applicability and implementation date of the Handgun Qualification License provisions of the Act issued by Defendant Maryland State Police and the Office of the Attorney General of Maryland. Additionally, Plaintiffs are potentially subject to criminal prosecution and civil penalties for taking possession of without a valid Handgun Qualification License, or transferring to an individual without a Handgun Qualification License, after October 1, 2013, even though the MSP Release expressly states that they may do so. Accordingly, the MSP Release creates a profound and imminent danger to Plaintiffs and those similarly situated and Plaintiffs respectfully urge this Court that they are entitled to the declaratory and injunctive relief prayed for below.

55. The confusion created by the opposing statements issued by Defendant Maryland State Police and the Office of the Attorney General violate Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment, as well as their rights under the Second Amendment.

56. Plaintiffs seek relief for at least 90 days from the effective date of the Handgun Qualification License provisions of the Act so as to allow those who have purchased handguns

and are awaiting processing by Defendant Maryland State Police to be able to acquire their handguns without first obtaining a Handgun Qualification License.

WHEREFORE, Plaintiffs pray that this Honorable Court:

A. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that Section 5-117.1 of the Public Safety Article of the Maryland Code, as amended by the Act, infringes on the right of the individual Plaintiffs and members of association Plaintiffs to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution, insofar as it creates a *de facto* prohibition on October 1, 2013, and is void;

B. Enter an injunction staying the effective date of Section 5-117.1 of the Public Safety Article, as amended by the Act, and enjoining the Defendants and their officers, agents, and employees from enforcement of the Handgun Qualification License provisions until Handgun Qualification Licenses can be obtained and the October 1, 2013 backlog is processed;

C. Award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

D. Grant such other relief as the Court deems proper.

Respectfully submitted,

John Parker Sweeney (Bar No. 08761)
T. Sky Woodward (Bar No. 10823)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
P (202) 719-8216
F (202) 719-8316
JSweeney@babc.com

*Counsel for Plaintiffs.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of September, 2013, copies of this Complaint were served, via electronic delivery to the below e-mail address, on the following:

> Office of the Attorney General
> Douglas F. Gansler (dgansler@oag.state.md.us)
> Attorney General
> 200 St. Paul Place
> Baltimore, Maryland 21202
>
> Office of the Attorney General
> Mark H. Bowen (mark.bowen@maryland.gov)
> Assistant Attorney General
> 1201 Reisterstown Road
> Pikesville, Maryland 21208
>
> Office of the Attorney General
> Matthew Fader (mfader@oag.state.md.us)
> Deputy Chief Assistant Attorney General
> 200 St. Paul Place
> Baltimore, Maryland 21202

Hard copies will be delivered by Private Process Server once Summonses have been issued.

_____
John Parker Sweeney, Esq.