IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| JANE DOE, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: _____ |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN J. O'MALLEY, in his official | ) | |
| capacity as Governor of the State of | ) | |
| Maryland, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| Serve On: | ) | |
| | ) | |
| Office of the Attorney General | ) | |
| Douglas F. Gansler | ) | |
| Attorney General | ) | |
| 200 St. Paul Place | ) | |
| Baltimore, Maryland 21202 | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER**

Plaintiffs Jane Doe, John Doe, Jack Doe, Wink's Sporting Goods, Atlantic Guns, Inc.,

Associated Gun Clubs of Baltimore, Inc., Maryland Shall Issue, Inc., Maryland State Rifle and

Pistol Association, Inc., and Maryland Licensed Firearms Dealers Association, Inc. (collectively,

"Plaintiffs"), by and through undersigned counsel, hereby submit this Memorandum in Support

of Motion for Temporary Restraining Order pursuant to Local Rule 105.

**INTRODUCTION**

Plaintiffs bring this action for a temporary restraining order, pursuant to Federal Rule of Civil Procedure 65, to prevent the Defendants' enforcement of the Handgun Qualification License requirement of The Firearm Safety Act of 2013 (the "Act") that will completely bar law-abiding, responsible Plaintiffs from exercising their fundamental constitutional right to acquire a handgun for defense in the home for an indeterminate period of time.  Defendants' imminent enforcement of the Handgun Qualification License scheme will also cause significant economic harm to the individual members of Plaintiff MLFDA and business Plaintiffs, insofar as the sale of handguns, which constitutes a significant portion of their businesses, will be completely prohibited for the same indeterminate period.

For the reasons stated herein, Plaintiffs hereby request that this Court issue a temporary restraining order pursuant to Federal Rule of Civil Procedure 65, staying the effective date of, and enjoining Defendants from enforcing, Section 5-117.1 of the Public Safety Article of the Maryland Code as amended by the Act, for fourteen days, so as to allow the parties to brief, and the Court to hold a hearing and issue a ruling on, a preliminary injunction.  A preliminary injunction should issue for at least ninety days to allow Defendants to process and grant applications for Handgun Qualification Licenses by persons seeking to purchase handguns on or after October 1, 2013, allowing applicants to purchase handguns.  This preliminary injunction will also allow Defendants to process applications to purchase handguns now caught in the pre-October backlog so that applicants can obtain possession of their handguns without first obtaining a Handgun Qualification License, as Defendant Maryland State Police declared would only be fair.

2

## FACTS

Under Section 5-117.1 of the Public Safety Article, it is generally prohibited, as of October 1, 2013, for an individual to "sell, rent, or transfer a handgun to a purchaser, lessee, or transferee unless the purchaser, lessee, or transferee presents to the dealer or other person a valid handgun qualification license issued to the purchaser, lessee, or transferee by the Secretary under this Section." MD. CODE ANN., PUB. SAF. § 5-117.1(b). It is also unlawful to "purchase, rent, or receive a handgun" unless the purchaser, renter, or recipient possesses a valid Handgun Qualification License, possesses valid law enforcement credentials (including retirement credentials), is a retired or active member of the Armed Forces or National Guard, or is acquiring a curio or relic as defined by federal law. MD. CODE ANN., PUB. SAF. § 5-117.1(c)(1).

In order to apply for a Handgun Qualification License, a prospective purchaser must apply to the Maryland State Police and demonstrate that he or she is over 21 years of age, is a resident of the State, and has completed an approved firearms safety course within three years prior to applying. MD. CODE ANN., PUB. SAF. § 5-117.1(d). The firearms safety course must include at least four hours of instruction on state firearm law, home firearm safety, and handgun mechanisms and operation and must include an "orientation component that demonstrates the person's safe operation and handling of a firearm," MD. CODE ANN., PUB. SAF. § 5-117.1(d)(3), and is estimated to cost up to $200. The applicant for a Handgun Qualification License must also submit to the Maryland State Police a complete set of his or her fingerprints at a cost of up to $57, "the fee authorized under § 10-221(b)(7) of the Criminal Procedure Article, which is paid with the Form 77R and costs $10," "the mandatory processing fee required by the Federal Bureau of Investigation for a national criminal history records check," which is also included in

3

the $10 Form 77R fee, and "a non-refundable application fee to cover the costs to administer the program of up to $50." MD. CODE ANN., PUB. SAF. § 5-117.1(f)(3) & (g)(2).

A violation of this provision is punishable under Section 5-144 of the Public Safety Article by imprisonment for up to five years and a fine of up to $10,000. There are exemptions to this prohibitory scheme that allow current and former law enforcement officers, current and former members of the military, manufacturers, and those trading in curios and relics to avoid the requirement of obtaining a Handgun Qualification License and/or to avoid the costly training requirement. MD. CODE ANN., PUB. SAF. § 5-117.1(a), (c)(1)(ii)-(iv), and (e).

To date, Defendants have not made available the application to acquire a Handgun Qualification License and, per Defendant Maryland State Police's website, they will not do so before October 1, 2013. Thus, as of October 1, 2013, and for an indeterminate period of time thereafter, law-abiding, responsible citizens including Plaintiffs, will not be able to purchase or otherwise acquire a handgun for the lawful purpose of self-defense in the home without facing severe criminal penalties.

On August 1, 2013, the office of the Attorney General of Maryland issued a legal opinion (the "August 1 Opinion Letter") in response to a request from Delegate Michael D. Smigiel, Sr. The August 1 Opinion Letter provided:

> You have asked for advice concerning whether a person who purchases a handgun before October 1, 2013 may accept delivery of the handgun if it is delayed past October 1 due to delays in background checks without first obtaining a handgun qualification license. **It is my view that they may not.**
>
> Chapter 427, Laws of Maryland 2013, enacted by Senate Bill 281, added a new Public Safety Article, § 5-117.1, which generally provides that a dealer may not sell, rent, or transfer a handgun to a person unless the person presents that person's handgun qualification license to the dealer. § 5-117.1(b). It further provides that a person may purchase, rent, or receive a handgun only if the person

4

possesses a valid handgun qualification license issued to them. § 5-117.1(c). **No exception is made for handguns that are ordered or applied for prior to October 1, 2013.** *Contrast* Criminal Law Article, § 4-303(b)(3) (allowing a person to possess and transport an assault long gun or a copycat weapon if the person lawfully possessed, has a purchase order for, or completed an application to purchase an assault long gun or a copycat weapon prior to October 1, 2013). In the absence of such an exception, it is my view that after October 1, 2013 a person may not take delivery of, and a dealer may not deliver, a handgun to a person who does not have a handgun qualification license, even if the purchase was arranged prior to October 1, 2013.

(Emphasis added)

On September 24, 2013, Defendant Maryland State Police issued a "News Release," headed "Firearm Purchase Applicants With Applications Pending on October 1 Will Not Need To Obtain A Handgun Qualification License." (the "MSP Release"). The MSP Release provided in pertinent part:

Marylanders who have submitted handgun purchase applications on or before September 30 **will not be required** to obtain a handgun qualification license, **as required by the new law** that is set to take effect on Oct. 1.

The new law that takes effect in Maryland on October 1 states that a handgun may not be sold, rented, or transferred unless the purchaser, lessee, or transferee has a valid handgun qualification license.

The Maryland State Police (MSP) will not enforce the requirements of the new law with respect to applicants whose applications are pending as of October 1. It was widely understood that the new requirements would not be enforced as to applications that were pending before October 1. In light of the number of currently pending applications—resulting from the unprecedented spike in new applications in recent months—it is a fair, reasoned, and appropriate result for those who are waiting for their pending purchase applications to be processed.

Persons who submit purchase applications on or after October 1, 2013, unless otherwise exempted by law, will be required to apply for and obtain a handgun qualification license before attempting to purchase a handgun.

(Emphasis added)

The MSP Release has engendered, and will continue to engender, mass confusion as to the state of the law with respect to the implementation and effect of the Handgun Qualification

License requirement. The text of the MSP Release itself is plainly ambiguous, as it states <u>both</u> that a Handgun Qualification License will not be required for those who have submitted a handgun purchase application prior to October 1, 2013, <u>and</u> that SB 281 affirmatively requires that a Handgun Qualification License will be required for those who have submitted a handgun purchase application prior to October 1, 2013. Clearly, something cannot be simultaneously required and not required under the law.

The August 1 Opinion Letter and the MSP Release contradict one another. Under these circumstances alone, it is impossible for Plaintiffs to know what their rights or potential liabilities are under the Handgun Qualification License provisions of the Act.

In addition to the MSP Release stating a legal position which the office of the Attorney General of Maryland has already determined is improper under the Act, there exist other reasons why Plaintiffs cannot prudently rely on the MSP Release. While Defendant Maryland State Police may have general state-wide jurisdiction to enforce a state law, other law enforcement officials have jurisdiction as well, including every county' State's Attorney, police chief, and/or Sheriff. None of these other Maryland law enforcement officials is constrained by the MSP Release.

In addition, it is far from clear that a Maryland firearm dealer can lawfully comply with the MSP Release while also adhering to federal requirements for maintaining its Federal Firearms License ("FFL"), which is a prerequisite to maintaining its Maryland Regulated Firearms License ("MRFL").

Federal law, 18 USC § 922(b), provides in pertinent part:

(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver –

6

(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age;

(2) any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance;

Furthermore, the webpage of the Bureau of Alcohol, Tobacco, Firearms and Explosives

(the "ATF") provides expressly:

Q: Does the Federal firearms law require licensees to comply with State laws and local published ordinances when selling firearms?

Yes. It is unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver any firearm or ammunition to any person if the person's purchase or possession would be in violation of any State law or local published ordinance applicable at the place of sale or delivery.

[18 U.S.C. 922(b)(2), 27 CFR 478.99(b)(2)]

*See*    http://www.atf.gov/firearms/faq/licensees-conduct-of-business.html#compliance-with-laws-ordinances.

In short, while Defendant Maryland State Police might not enforce the Handgun Qualification License requirement, it is still unlawful for a seller to deliver a handgun to a purchaser who does not have a Handgun Qualification License after October 1, 2013. Thus, all federally licensed dealers are potentially violating federal law and can be prosecuted and/or made to forfeit their FFLs and MRFLs.

Plaintiffs in this case are faced with competing statements of the applicability and implementation date of the Handgun Qualification License provisions of the Act issued by

7

Defendant Maryland State Police and the Office of the Attorney General of Maryland. Additionally, Plaintiffs are potentially subject to criminal prosecution and civil penalties for taking possession of without a valid Handgun Qualification License, or transferring to an individual without a Handgun Qualification License, after October 1, 2013, even though the MSP Release expressly states that they may do so. Accordingly, the MSP Release creates a profound and imminent danger to Plaintiffs and those similarly situated and Plaintiffs respectfully urge this Court that they are entitled to the declaratory and injunctive relief prayed for below.

**Impact on Plaintiffs That Will Be Caused by Enforcement of Challenged Provisions**

Individual Plaintiffs will be immediately and irrevocably harmed by the enforcement of the Handgun Qualification License requirement. As of October 1, 2013, individual Plaintiffs and members and/or customers of association Plaintiffs will be barred completely from purchasing in Maryland handguns for an indeterminate amount of time, because Defendant Maryland State Police has not yet begun to accept applications for Handgun Qualification Licenses. Business Plaintiffs and members of Plaintiff MLFDA will suffer serious economic harm as they will not be able to sell handguns as of October 1, 2013 for an indeterminate amount of time.

Plaintiff Jane Doe

Plaintiff Jane Doe resides in Deal Island, Maryland and has purchased a handgun. *See* Declaration of Jane Doe at ¶¶ 2-3 (Attached as Exhibit 1). She purchased this firearm for the purpose of defending herself in her home, and it is the first handgun she has ever purchased. *Id.* at ¶ 8. Plaintiff Jane Doe submitted her Form 77R to Defendant Maryland State Police, but, because she purchased her handgun less than eight days before October 1, 2013, she will not be

able to take possession of her handgun before the effective date of the Act. *Id.* at ¶¶ 4-5. Plaintiff Jane Doe has been advised that she will need to acquire a Handgun Qualification License if Defendant Maryland State Police does not process her application before October 1, 2013. *Id.* at ¶ 7. As a result of the Act, Plaintiff Jane Doe will not be able to take possession of her already-purchased handgun that she intends to use for the lawful purpose of self-defense for an indeterminate period of time. The MSP Release does not afford her any relief, because federal law will prohibit the dealer from which she purchased the handgun to complete the transfer after October 1, 2013, and law enforcement agents other than Defendant Maryland State Police can still prosecute her.

Plaintiff John Doe

Plaintiff John Doe resides in Gaithersburg, Maryland and purchased a handgun on September 26, 2013. *See* Declaration of John Doe at ¶¶ 2-3 (Attached as Exhibit 2). He purchased this firearm for the purpose of defending himself in his home. *Id.* at ¶ 6. Plaintiff John Doe submitted his Form 77R to Defendant Maryland State Police, but, because Defendant Maryland State Police has not processed his application and it has not yet been eight days since his purchase, he has been unable to take possession of the firearm he purchased. *Id.* at ¶¶ 4-5. Plaintiff John Doe has been advised that he will need to acquire a Handgun Qualification License because he cannot take possession of his handgun before October 1, 2013. *Id.* at ¶ 7. As a result of the Act, Plaintiff John Doe will not be able to take possession of his already-purchased handgun that he intends to use for the lawful purpose of self-defense for an indeterminate period of time. The MSP Release does not afford him any relief, because federal law will prohibit the

dealer from which he purchased the handgun to complete the transfer after October 1, 2013, and law enforcement agents other than Defendant Maryland State Police can still prosecute him.

Plaintiff Jack Doe

Plaintiff Jack Doe resides in Potomac, Maryland and purchased a handgun on September 25, 2013. *See* Declaration of Jack Doe at ¶¶ 2-3 (Attached as Exhibit 3). He purchased this firearm for the purpose of defending himself in his home. *Id.* at ¶ 6. Plaintiff Jack Doe submitted his Form 77R to Defendant Maryland State Police, but, because Defendant Maryland State Police has not processed his application and it has not yet been eight days since his purchase, he has been unable to take possession of the firearm he purchased. *Id.* at ¶¶ 4-5. Plaintiff Jack Doe has been advised that he will need to acquire a Handgun Qualification License because he cannot take possession of his handgun before October 1, 2013. *Id.* at ¶ 7. As a result of the Act, Plaintiff Jack Doe will not be able to take possession of his already-purchased handgun that he intends to use for the lawful purpose of self-defense for an indeterminate period of time. The MSP Release does not afford him any relief, because federal law will prohibit the dealer from which he purchased the handgun to complete the transfer after October 1, 2013, and law enforcement agents other than Defendant Maryland State Police can still prosecute him.

Plaintiff Wink's Sporting Goods

Plaintiff Wink's Sporting Goods ("Wink's"), located in Princess Anne, Maryland, is owned and operated by Carol Wink, who possesses a federal firearms license and is a Maryland regulated firearms dealer. *See* Declaration of Carol Wink at ¶ 2 (Attached as Exhibit 4). Wink's offers various services related to firearms, including gunsmithing, appraisal, and sales, including the sales of handguns. *Id.* at ¶¶ 3-4. As of October 1, 2013, Wink's will no longer be able to sell

handguns for an indeterminate period of time, because Defendant Maryland State Police has not yet provided a mechanism for acquiring a Handgun Qualification License. *Id.* The MSP Release does not provide any relief from this problem, and, in fact, only furthers the confusion as it purports to allow Wink's to transfer handguns after October 1, 2013, to individuals who purchased such before that date, but, in reality, federal law prohibits such a transfer. Moreover, as the opinion of the Office of the Attorney General makes clear, such a transfer would still violate State law. As a result of the Act, Plaintiff Wink's Sporting Goods will suffer significant economic harm.

Plaintiff Atlantic Guns, Inc.

Plaintiff Atlantic Guns, Inc. ("Atlantic Guns"), which has locations in Silver Spring and Rockville, Maryland, is owned and operated by Stephen Schneider, who possesses a federal firearms license and is a Maryland regulated firearms dealer. *See* Declaration of Stephen Schneider at ¶ 4 (Attached as Exhibit 5). Atlantic Guns engages in the sale of firearms, including handguns, and related accessories and offers training in the use of firearms. *Id.* at ¶ 3. As of October 1, 2013, Atlantic Guns will no longer be able to sell handguns for an indeterminate period of time, because Defendant Maryland State Police has not yet provided a mechanism for acquiring a Handgun Qualification License. *Id.* at ¶ 4. The MSP Release does not provide any relief from this problem, and, in fact, only furthers the confusion as it purports to allow Atlantic Guns to transfer handguns after October 1, 2013, to individuals who purchased such before that date, but, in reality, federal law prohibits such a transfer. Moreover, as the opinion of the Office of the Attorney General makes clear, such a transfer would still violate

State law.  As a result of the Handgun Qualification License requirement, Atlantic Guns will suffer serious economic harm.

Plaintiff Associated Gun Clubs of Baltimore, Inc.

Plaintiff Associated Gun Clubs of Baltimore, Inc. ("AGC") is an association that was formed by World War II veterans in the Baltimore area who wanted a place for recreational and competitive shooting.  *See* Declaration of John Josselyn at ¶ 3 (Attached as Exhibit 6).  AGC consists of 15 charter member clubs as well as 14 associate member clubs.  *Id.* Among AGC's club membership are numerous individuals who wish to purchase, on or after October 1, 2013, handguns, which will require individual members of AGC to acquire a Handgun Qualification License.  *Id.* at ¶¶ 4, 6.  As a result of the Act, the individual members of Plaintiff AGC will not be able to acquire the handguns they wish to acquire for an indeterminate period of time, because Defendant Maryland State Police has not yet provided a mechanism for acquiring a Handgun Qualification License.

Plaintiff Maryland Shall Issue, Inc.

Plaintiff Maryland Shall Issue, Inc. ("MSI") is an association dedicated to the preservation of Maryland firearm owners' rights.  *See* Declaration of Patrick Shomo at ¶ 3 (Attached as Exhibit 7).  Among MSI's club membership are numerous individuals who wish to purchase, on or after October 1, 2013, handguns, which will require individual members of MSI to acquire a Handgun Qualification License.  *Id.* at ¶¶ 4, 6.  As a result of the Act, the individual members of Plaintiff MSI will not be able to acquire the handguns they wish to acquire for an indeterminate period of time, because Defendant Maryland State Police has not yet provided a mechanism for acquiring a Handgun Qualification License.

Plaintiff Maryland State Rifle and Pistol Association, Inc.

Plaintiff Maryland State Rifle and Pistol Association, Inc ("MSRPA") is an association dedicated to promoting proper marksmanship and education regarding safe firearm handling. *See* Declaration of William Palk at ¶ 3 (Attached as Exhibit 8). MSRPA also sanctions various competitions in all shooting disciplines. *Id.* Among MSRPA's club membership are numerous individuals who wish to purchase, on or after October 1, 2013, handguns, which will require individual members of MSRPA to acquire a Handgun Qualification License. *Id.* at ¶¶ 4, 6. As a result of the Act, the individual members of Plaintiff MSRPA will not be able to acquire the handguns they wish to acquire for an indeterminate period of time, because Defendant Maryland State Police has not yet provided a mechanism for acquiring a Handgun Qualification License.

Plaintiff Maryland Licensed Firearms Dealers Association, Inc.

Plaintiff Maryland Licensed Firearms Dealers Association, Inc. ("MLFDA") is an association dedicated to the representing the interests of the numerous firearm dealers in the State of Maryland, as well as the interests of its members and members' customers. *See* Declaration of Stephen Schneider at ¶ 3. Handguns constitute a significant portion of MLFDA's members' sales, such that the Act will cause those members severe economic harm. *See id.* at ¶ 6. As of October 1, 2013, members of MLFDA will no longer be able to sell handguns for an indeterminate period of time, because Defendant Maryland State Police has not yet provided a mechanism for acquiring a Handgun Qualification License. *Id* at ¶ 4. As a result, the Act will cause significant economic harm to members of MLFDA in that their sales will decline severely.

**ARGUMENT**

**A TEMPORARY RESTRAINING ORDER IS NECESSARY TO PRESERVE THE
STATUS QUO AND PREVENT DEFENDANT'S IMMINENT INFRINGEMENT OF
PLAINTIFFS' CONSTITUTIONAL RIGHTS**

Pursuant to Federal Rule of Civil Procedure 65, this Court is possessed with the power to issue temporary restraining orders restraining a party from performing a specific act. Whether to grant such injunctive relief lies within the sound discretion of this Court. *See United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013). To secure issuance of injunctive relief, such as a temporary restraining order, a proponent must allege and demonstrate: "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that the injunction is in the public interest. *Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008); *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013). The purpose of issuing a temporary restraining order is "to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp*, 174 F.3d 411, 422 (4th Cir. 1999).

This Court is also possessed with the authority to enjoin the effective date of a statute. In *Planned Parenthood v. Daugaard*, for example, the District Court characterized its injunction as having "prevented certain provisions of the Act from taking effect." 2013 U.S. Dist. LEXIS 1208. *See also Planned Parenthood v. Miller*, 860 F.Supp. 1409, 1411 (D. S.D. 1994), *aff'd on other grounds*, 62 F.2d 1452 (8th Cir. 1995), (noting the court had issued a temporary restraining order and with "stipulation of counsel, [that] the effective date of the act has been stayed pending final determination of the constitutional questions"); *Diaz v. Brewer*, 656 F.3d 1008, 1010 (9th

Cir. 2011) (affirming "the district court's order granting a preliminary injunction to prevent a state law from taking effect that would have terminated healthcare benefits of state employee's same-sex partners"); *A Woman's Choice - East Side Women's Clinic v. Newman*, 305 F.3d 684, (7th Cir. 2002), (characterizing the District Court's preliminary injunction as "preventing the statute from taking effect"); *Evergreen Association v. City of New York*, 801 F.Supp. 2d 197, 211 (D. S.D. N.Y. 2011) (granting plaintiffs motion to "preliminarily enjoin Local Law 17 from taking effect on July 14, 2011"); *First Premier Bank v. United States Consumer Financial Protection Bureau*, 819 F. Supp. 2d 906, (D. S.D. 2011) (preliminarily enjoining the effective date of regulations promulgated by the Bureau because they exceeded the Bureau's statutory authority).

As explained below, this Court should issue a temporary restraining order enjoining the effective date of, and restraining Defendants from enforcing, The Handgun Qualification License requirement, Section 5-117.1 of the Public Safety Article, as amended by the Act, to preserve the status quo, until such time as a decision can be rendered on whether a preliminary injunction should issue, so as to protect law-abiding, responsible Plaintiffs from irreparable harm that will occur because of the Act's unconstitutional infringement on their Second Amendment rights. Defendants' implementation of the Handgun Qualification License requirement and their failure to complete a regulatory process for issuing Handgun Qualification Licenses before October 1, 2013, will cause a complete, categorical prohibition on handgun purchases and transfers as of that date that will last for an indeterminable amount of time – a result in direct violation of Supreme Court precedent.

A.    <u>Plaintiffs Are Likely to Succeed on the Merits.</u>

The United States Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), made clear that the rights secured under the Second Amendment to the United States Constitution are individual rights. Most sacrosanct among those rights is the "right of law-abiding, responsible citizens to use arms in defense of hearth and home," which the Court described as being "elevate[d] above all else." *Id.* at 635. For purposes of defending the home and hearth, the Court noted that "the handgun is the quintessential self-defense weapon," *id.* at 629, and that "the enshrinement of constitutional rights takes some policy choices off the table." *Id.* at 636. As made applicable to the States in *McDonald v. City of Chicago*, 130 S.Ct 3020 (2010), the Second Amendment, thus, protects, at its core, individual citizens from government intrusion into their choice to acquire and use a handgun in lawful defense of themselves and their families. The effect of the Act, however, will be completely curtail for an indeterminable period of time the exercise of this fundamental right.

*The Act Results in a Complete Prohibition on the Acquisition of Handguns for an Indeterminable Period of Time, in Violation of the Supreme Court's Mandate in* Heller.

The Supreme Court held in *Heller* that a complete prohibition on the ability of law-abiding citizens to acquire and use handguns for self-defense in the home is "off the table." *Heller,* 554 U.S. at 636. The implementation of the Act, however, will result in a complete ban identical to that which was held unconstitutional in *Heller*.

As of October 1, 2013, individual Plaintiffs and members of association Plaintiffs will not be able to acquire a handgun without being in possession of a Handgun Qualification License. To date, Defendant Maryland State Police has not made available a mechanism for acquiring a Handgun Qualification License and, per its website, will not do so before October 1,

2013, at the very earliest. Therefore, as of October 1, 2013, Plaintiffs will be completely barred from exercising their fundamental rights to acquire handguns for self-defense. The complete prohibition is a result of Defendants' own actions, as the Act was passed months ago and Defendants have chosen not to make the applications available until October 1, 2013.

Even assuming that system begin operation on October 1, 2013, the complete prohibition on acquiring a handgun will continue until such time as Plaintiffs complete the onerous steps required to apply for a Handgun Qualification License, submit their applications to Defendant Maryland State Police, and receive their Handgun Qualification Licenses. While the Act purports to direct Defendant Maryland State Police to issue the Handgun Qualification License within thirty days of receiving the application if it is approved, MD. CODE ANN., PUB. SAF. § 5-117.1(h), this provides no guarantee that Plaintiffs' rights will be restored to them by October 31, 2013, given Defendant Maryland State Police's past conduct.

Under the existing handgun purchasing scheme, Defendant Maryland State Police is required to disapprove an applicant who wishes to purchase a handgun within seven days of receiving the applicant's Form 77R. MD. CODE ANN., PUB. SAF. § 5-122(b). Defendant Maryland State Police has failed to abide by this statutory requirement for over a year and is facing an unprecedented backlog of nearly 50,000 applications. Currently, Defendant Maryland State Police is taking nearly *four months* to complete its statutory seven day duty. Given that Defendant Maryland State Police is exceeding grossly its time limit for the current process, Plaintiffs could be barred from exercising their fundamental constitutional rights for over a year, based on Defendant Maryland State Police's past performance of its statutory duties.

The MSP Release does not alleviate the complete ban and allow those who purchased handguns prior to October 1, 2013, but who are caught up in Defendant Maryland State Police's self-inflicted backlog, to acquire their handguns, even though it purports to do just that. The Handgun Qualification License requirement is, as of October 1, 2013, part of the Maryland Criminal Code. As such, any law enforcement officer can effect an arrest of, and any prosecutor may pursue charges against, an individual who acquires a handgun after that date without a Handgun Qualification License and any business that sells or transfers a handgun to a person without a Handgun Qualification License.

The Maryland Court of Appeals has held that "Article 8 of the Declaration of Rights expresses the principle that 'the Legislature makes the laws, the Judiciary expounds them, and the Governor sees that they are faithfully executed...' *Baltimore v. State*, 15 Md. 376, 456 (1860). '[B]ut even in this duty, [the Executive] is restrained in some degree, because they must be enforced according to the Constitution and laws and not at his will and discretion.' *Id.*" *State v. Smith*, 505 A.2d 511, 522 (Md. 1986). In other words, clearly established separation of powers principles preclude the executive branch (in this case Defendant Maryland State Police, a distinct agency within the executive branch of Maryland state government) from refusing to enforce the law.

Furthermore, the Maryland State Police, while they have general state-wide jurisdiction, may not act to enforce a law within the limits of a municipal corporation that maintains a police force, except under certain enumerated circumstances, none of which apply in this case. See MD Code, Public Safety, § 2-412(c). In other words, the MSP Release has no bearing whatsoever on the enforcement of the Handgun Qualification License requirement of the Act in any of the cities

or towns of Maryland that have their own police force, and every state's attorney, police chief, sheriff or other Maryland state law enforcement officer or official neither is constrained by the MSP Release, nor possesses the discretion to refuse to enforce the Handgun Qualification License requirement.

Additionally, Plaintiffs and members of association Plaintiffs that are holders of Federal Firearms Licenses must comply with federal law. 18 USC § 922(b) provides in pertinent part:

> (b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver –
>
> (1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age;
>
> (2) any firearm to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance

Because it is still unlawful for a dealer to sell to a prospective purchaser without a Handgun Qualification License a handgun on or after October 1, 2013, despite any decision of non-enforcement by Defendant Maryland State Police, business Plaintiffs and members of association Plaintiffs that hold a Federal Firearms License will be subject to arrest, prosecution, incarceration, and deprivation of their civil rights. Thus, the result of the Handgun Qualification License requirement will be to completely bar the exercise of Plaintiffs' fundamental right to acquire a handgun in self-defense in their homes as of October 1, 2013.

A categorical prohibition on acquiring a handgun for use in the home is forbidden by the Second Amendment. Defendants cannot justify this categorical ban and have nothing by which to explain it other than their own inability to implement and execute the Act in a timely manner. Plaintiffs cannot be forced to suffer the loss of their fundamental rights for an indeterminate period because Defendant Maryland State Police acted in such a manner as to guarantee that Plaintiffs will be unable to acquire a handgun as of October 1, 2013. Because enforcement of Section 5-117.1 will cause exactly that result, Defendants must be enjoined from enforcing that provision.

B.     The Balance of Equities Weighs Heavily in Plaintiffs' Favor.

There can be no doubt that the benefits that would be provided to individual Plaintiffs, business Plaintiffs, and the individual members of association Plaintiffs by way of the requested temporary restraining order are profound. Specifically, such relief would enable those Plaintiffs to exercise their fundamental constitutional right to purchase and keep handguns for purposes of self-defense in their homes as guaranteed by the Second Amendment to the United States Constitution. To the contrary, there exists little, if any, potential harm to Defendants resulting from such injunctive relief, which merely would compel Defendants to maintain enforcement of the law as it was before the Act was to take effect until a hearing on a preliminary injunction can be held. Issuance of the requested relief will not force the government to allocate funds to any particular entity nor will it cause a loss of revenue, as the fees implemented by the Act are, purportedly, for its own administration. Moreover, it will permit both Plaintiffs and Defendants to fully brief the issue for the Court before a hearing on a preliminary injunction. Thus, the

balance of equities tips heavily in favor of Plaintiffs and issuance of the requested temporary restraining order.

      C.     <u>Plaintiffs Will Suffer Irreparable Harm to Their Rights If the Injunctive Relief Is Not Granted.</u>

It is axiomatic that Plaintiffs possess a fundamental constitutional right to purchase and keep handguns for purposes of self-defense in their homes as guaranteed by the Second Amendment to the United States Constitution. *McDonald*, 130 S. Ct. 3020; *Heller*, 554 U.S. 570. In the absence of the requested temporary restraining order, Defendants' enforcement of the challenged provision of the Act will completely curtail Plaintiffs exercise of this right for an indeterminate amount of time. This is a daily violation of Plaintiffs' rights under the Second Amendment and causes Plaintiffs to suffer irreparable harm. *See Ezell v. City of Chicago*, 651 F.3d 684, 710-11 (7th Cir. 2011) (remanding the case for entry of a preliminary injunction where Plaintiffs showed that "they are suffering violations of their Second Amendment rights every day. . . ."). Absent a temporary restraining order, Defendants' actions will continue to prevent Plaintiffs from exercising their fundamental constitutional rights, threatening to undermine Plaintiffs' ability to protect themselves, their families, and their homes from criminals and others who might seek to cause them harm.

      D.     <u>The Injunctive Relief Is in the Public Interest.</u>

The final requirement, that the imposition of the temporary restraining order be in the public interest, is manifestly met in this case. Plaintiffs seek to ensure that the government and its agents do not erode the core constitutional rights possessed by all law-abiding, responsible citizens. This is precisely the type of public interest that satisfies the imposition of preliminary

injunctive relief, as the Fourth Circuit noted recently when upholding the grant of a preliminary

injunction:

> precedent counsels that "a state is in no way harmed by issuance of a preliminary
> injunction which prevents the state from enforcing restrictions likely to be found
> unconstitutional.  If anything, the system is improved by such an injunction."
> *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (internal
> quotation marks omitted).  It also teaches that "upholding constitutional rights
> surely serves the public interest." *Id.*

*Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 2013 U.S. App. LEXIS 13606 at *17 (4th

Cir. 2013).  Thus, because a temporary restraining order would prevent the enforcement of

restrictions likely to be found unconstitutional, such injunctive relief is in the public interest.

     E.     Any Security Should Be Waived or Set at $0.

Under Federal Rule of Civil Procedure 65(c), a Court may only issue a temporary

restraining order if "the movant gives security in an amount that the court considers proper to

pay the costs and damages sustained by any party found to have been wrongfully enjoined or

restrained." The Court, however, retains discretion to waive the security requirement. *Pashby v.*

*Delia*, 709 F.3d 307, 332 (4th Cir. 2013).  In this case, Defendants will not sustain any damages

nor incur any costs if the temporary restraining order should issue.  Thus, the Court should

exercise its discretion to either waive the security requirement or set it at zero ($0) dollars.

## CONCLUSION

Based on the foregoing, Plaintiffs request respectfully that this Court grant (i) a

temporary restraining order staying the effective date of Section 5-117.1 of the Public Safety

Article, as amended by the Act, and restraining Defendants from enforcing Section 5-117.1 of

the Public Safety Article, as amended by the Act, for fourteen days to allow the parties to brief,

and the Court to render a decision on, whether to grant a preliminary injunction, and (ii) a

preliminary injunction staying the effective date of Section 5-117.1 of the Public Safety Article,

as amended by the Act, and restraining Defendants from enforcing Section 5-117.1 of the Public

Safety Article, as amended by the Act, for 90 days or until Handgun Qualification Licenses can

be obtained and the 77R backlog is cleared.  Plaintiffs also request that this Court exercise its

discretion and waive any security or set it at $0.

     Plaintiffs request respectfully that the Court hear oral argument on their Motion.

             Respectfully submitted,

             John Parker Sweeney (Bar No. 08761)
             T. Sky Woodward (Bar No. 10823)
             BRADLEY ARANT BOULT CUMMINGS LLP
             1615 L Street N.W., Suite 1350
             Washington, D.C. 20036
             P (202) 719-8216
             F (202) 719-8316
             JSweeney@babc.com

             *Counsel for Plaintiffs.*